UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Datatrak International, Inc.,** | ) | **CASE NO. 1:11 CV 458** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Medidata Solutions, Inc.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

### **INTRODUCTION**

This matter is before the Court upon Medidata's Motion for a Protective Order that Permits In-House Counsel to Review "Attorneys'-Eyes Only" Documents (Doc. 12). Also before the Court are the parties' briefs regarding a patent-prosecution bar. This is a patent case. For the reasons that follow, Medidata's motion is DENIED. The Court further imposes a patent-prosecution bar as set forth herein.

### **ANALYSIS**

The parties have negotiated a protective order to govern this case. There are two issues over which the parties could not reach an agreement. Each will be addressed by the Court.

1

1.   Access to Attorneys' Eyes Only Documents

The parties dispute whether in-house counsel should be permitted to view documents designated as "attorneys' eyes only" ("AEO"). According to defendant, the Court should allow the parties to deviate from the default rule in this district, which prohibits in-house counsel from viewing AEO materials. Defendant argues that its general counsel, Michael Otner, plays an active supervisory role in directing litigation and settlement strategy. According to defendant, Otner needs access to AEO materials in order to most effectively serve in that role. Defendant claims that Otner is not engaged in "competitive decision making." Defendant also argues that there is no special risk of improper or unintended disclosure as Otner is an attorney in good standing with the bar of New York and understands his ethical obligations. Defendant further claims that any "prejudice" to plaintiff is an insufficient basis on which to deny defendant's request since any determination would apply equally to both parties.

On the other hand, plaintiff points out that the default provision in this District prohibits the disclosure of AEO materials to in-house counsel. Plaintiff argues that defendant fails to offer a sufficient basis on which to overcome the default provision. According to plaintiff, Otner is a competitive decisionmaker. Even if the Court disagrees, plaintiff claims that the risk of disclosure outweighs Otner's need to access AEO materials. Plaintiff further argues that it will be prejudiced if the Court grants defendant's motion. Plaintiff and defendant are competitors and accordingly, there is an increased risk of harm resulting from any disclosure. In addition, plaintiff claims that the relief defendant seeks would not treat the parties fairly. Plaintiff points out that defendant has two in-house attorneys. Therefore, defendant could designate Otner to view AEO materials and designate its other counsel to prosecute and draft patents (including

reexamination proceedings) directed at the technology in suit. On the other hand, plaintiff employs only one in-house counsel. As such, plaintiff would be placed in the untenable position of choosing whether to allow its counsel to view AEO materials or participate in patent prosecution.

An attorney should not be denied access to sensitive business information based solely on his status as an in-house counsel. *See, United States Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984). Rather, Courts must balance the need for access with the risk of inadvertent disclosure. "Involvement in 'competitive decisionmaking' is the oft-cited most critical factor weighing in favor of denial of access." *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co.*, LLC, 2008 WL 5634214 (E.D. Tex. March 14, 2008). To determine whether in-house counsel is a "competitive decisionmaker," the Court must analyze "the factual circumstances surrounding [counsel's] activities, association, and relationship with a party...." *Untied States Steel*, 730 F.2d at 1468.

In support of its position, defendant offers Otner's affidavit, in which he states as follows,

- As General Counsel I am asked to provide legal advice on a range of issues relating to virtually all aspects of Medidata's business, but I do not make decisions concerning solicitation of sales, pricing, or marketing of any Medidata product or service;

- Also, I am not personally involved in the technical research, the design, or the technical development of any Medidata product or service;

- I am not a patent attorney and have only limited involvement in the preparation and prosecution of patents for Medidata.

- I have no involvement in the preparation and prosecution of patents directed to the [technology in suit].

3

- I am not a member of Medidata's Board of Directors, although I often attend the Board of Directors meetings.

According to defendant, Otner personally makes no competitive decisions and is not personally involved in product research and development. He further has limited involvement with the prosecution of defendant's patents. As such, to deny him access to AEO materials would run afoul of *United States Steel*, which held that an attorney cannot be denied access to AEO materials based solely on his status as in-house counsel.

In response, plaintiff points to Medidata's website, in which Otner is described as follows,

> As general counsel at Medidata Solutions, [Mr. Otner] is responsible for managing the legal affairs of the company, including furnishing legal and corporate development advice to the company's CEO and other senior executives. [Mr. Otner] has over 10 years of experience in managing legal operations, with extensive knowledge in securities law, mergers and acquisitions, corporate governance, employment law and licensing.

Plaintiff argues that Otner is involved in competitive decisionmaking. According to plaintiff, defendant itself describes Otner as furnishing "corporate development" advice to the CEO. Plaintiff further points out that Otner's affidavit falls short of establishing that he is not *involved* in competitive decisionmaking. Rather, the affidavit simply provides that Otner does not ultimately make those determinations. Plaintiff further points out that Otner admits that he attends meetings of the Board of Directors. According to plaintiff, it is implausible that Otner would attend such meetings and sit idly by without providing any opinion.

Upon review, the Court agrees with plaintiff that Otner is a competitive decisionmaker. As plaintiff points out, both Otner's affidavit and defendant's description on its website indicate that Otner is involved in providing a wide range of advice, which includes not only legal advice but corporate development advice as well. Moreover, Otner admits that he has some

4

involvement in the preparation and prosecution of defendant's patents. In addition, defendant's website notes Otner's experience in licensing. *See, Intel Corp. V. VIA Technologies, Inc.*, 198 F.R.D. 525 (N.D. Cal. 2000)(noting that in-house attorney involved in licensing is a competitive decisionmaker because it places attorney in 'untenable position of having either to refuse to offer crucial legal advice... or risk disclosing protected information'). Given Otner's admitted wide and varying range of advice, together with the fact that Otner directly advises the CEO and other members of the management team on these issues and often attends board meetings, the Court finds that Otner is a competitive decisionmaker. *See, Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, (9th Cir. 1992)(in-house attorney denied access to confidential information where he advised client on a host of legal issues); *Wi-Lan, Inc. v. Acer, Inc.*, 2009 WL 1766143 (E.D. Tex. June 23, 2009)(noting that, unlike other decisions in which courts have found legal advisors who advise on a wide range of legal issues to be competitive decisionmakers, in-house counsel's involvement was limited to litigation and settlement negotiations); *Sprint Communications Co. v. Big River Telephone Co.*, 2008 WL 4401690 (D. Kan. Sept. 16, 2008)(finding attorney not a competitive decisionmaker where attorney worked exclusively in plaintiff's litigation department). The Court's determination is further supported by Otner's affidavit, in which he does not deny such involvement. Rather, Otner simply avers that he personally does not actually make the decisions. Even after plaintiff argued as much in its brief in opposition, Otner did not supplement his affidavit with anything to clarify his involvement. The Court thus infers that Otner, while not making the ultimate determinations, contributes to these types of decisions. As such, the Court finds that Otner is a competitive decisionmaker. Given that defendant does not dispute that it is a direct competitor of plaintiff, together with the

fact that Otner is a competitive decisionmaker, there is a high risk of inadvertent disclosure.

On the other hand, the Court finds that there is little to no risk of prejudice to defendant. As plaintiff points out, defendant is represented by highly qualified outside counsel. Otner does not claim to have highly specialized knowledge that would make access to AEO materials necessary. As such, defendant's ability to litigate this matter will not be prejudiced.

For these reasons, in-house counsel will not be permitted to access AEO materials.

2.  Patent-prosecution bar

Both parties agree that there should be a patent-prosecution bar in the protective order. The parties, however, dispute the scope of the bar. Plaintiff argues that the bar should apply only to attorneys who access AEO *technical* materials while defendant claims that the bar should apply to attorneys who access *any* materials designated "AEO." In addition, the parties dispute whether the patent-prosecution bar should apply to participation in reexamination proceedings. According to plaintiff, such a ban is unnecessary. Defendant asks the Court to prevent any attorney who accesses AEO materials from participating in reexamination proceedings.

Upon review, the Court finds that attorneys who access AEO technical materials will not be permitted to participate in reexamination proceedings. The Court finds that it would be nearly impossible for attorneys viewing technical AEO materials to separate out the information obtained from such materials with their own ideas. As a result, there is a high risk for inadvertent disclosure. This is particularly true when the reexamination proceedings relate to the patents-in-suit. Attorneys involved in patent litigation spend a great deal of time immersed in the technical aspects of the claims at issue. This time, together with access to AEO technical materials, further exacerbates the risk of inadvertent disclosure. The Court, however, agrees

with plaintiff that access to non-technical AEO materials does not create a risk of inadvertent disclosure, as it appears that only the technical aspect of the information is relevant in reexamination proceedings.  Defendant fails to articulate any basis for believing non-technical AEO materials will be compromised in a reexamination proceeding.  The Court rejects defendant's argument that labeling materials either "non-technical" AEO or "technical" AEO will be difficult or burdensome.  Accordingly, for these reasons, the Court finds that attorneys who access AEO technical materials are not permitted to participate in reexamination proceedings.

### **CONCLUSION**

For the foregoing reasons, Medidata's Motion for a Protective Order that Permits In-House Counsel to Review "Attorneys'-Eyes Only" Documents is DENIED.  The Court imposes a patent-prosecution bar as set forth herein.  The parties are directed to submit a protective order consistent with this Memorandum of Opinion and Order.

IT IS SO ORDERED.


    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 8/19/11