# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| DATATRAK International, Inc., | |
| Plaintiff, | |
| v. | Case No. 1:11-cv-00458-PAG |
| Medidata Solutions, Inc., | Hon. Patricia A. Gaughan |
| Defendant. | |

**MEDIDATA'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO STAY LITIGATION PENDING
<u>*EX PARTE* REEXAMINATION OF THE PATENT-IN-SUIT</u>**

**I.    STATEMENT OF ISSUE TO BE DECIDED**

Courts weigh the following three factors in deciding whether to stay patent litigation pending reexamination of the patent-in suit:  (1) whether a stay would unduly prejudice the non-moving party; (2) whether a stay will simplify the issues in dispute; and (3) whether discovery is complete and a trial date has been set.

In this case, (1) DATATRAK has not prosecuted this action with any sense of urgency and instead has moved the Court to stay discovery and to continue the case deadlines; (2) statistics indicate that the United States Patent and Trademark Office ("PTO") will almost certainly accept the pending reexamination request and then will likely either invalidate the patent or modify the scope of its claims significantly; and (3) discovery has barely begun and the Court has not yet set a trial date.

Should the Court stay this action pending the conclusion of the PTO's reexamination?

**II.    INTRODUCTION**

This action is the first time DATATRAK has tested its three-year old patent (U.S. Patent No. 7,464,087 (the "'087 patent")).  Medidata has already uncovered multiple prior-art references that disclose the features claimed in the '087 patent and, thus, strongly indicate that the patent is invalid.  At the very least, the prior art raises a substantial new question of patentability sufficient for reexamination.

Medidata refrained from seeking reexamination to allow the consensual mediation process to run its course, in hopes that a settlement could avoid further expenses.  But no resolution resulted from the mediation, and Medidata filed its request for reexamination promptly thereafter, on October 28, 2011.

Consistent with its rulings in prior, closely analogous cases, the Court should stay this action until the PTO completes the reexamination proceedings (or determines that reexamination

is not warranted).  The vast majority of *ex parte* reexamination requests – approximately 92% – are granted.  *Ex Parte* Reexamination Filing Data at 1 (Ex. A).  Of those, approximately 76% result in invalidity or patent claim amendments.  *See id.* at 2.  Absent a stay, if the PTO invalidates or amends any of the 52 claims DATATRAK has asserted here, the parties will needlessly expend resources and important aspects of the case may need to be re-litigated.  That is precisely why courts in this district almost always grant stays in circumstances like those here.[1]

- *No prejudice to DATATRAK* – Given the total absence of exigency in its prosecution of this case thus far, DATATRAK cannot credibly claim to be prejudiced by a stay. In fact, DATATRAK delayed service of its complaint for six months after filing it, did not seek preliminary injunctive relief, waited months further before hiring a vendor to begin e-discovery efforts, and has already asked the Court to stay this case.

- *Simplification and streamlining* – Statistics indicate a high likelihood that the PTO will (i) accept the request for reexamination here, and then (ii) cancel or modify at least some of the patent claims during reexamination.  If so, the parties and the Court should have the benefit of those decisions before this action proceeds further, so as to avoid the unnecessary expenditure of resources, promote judicial economy, and generally simplify and streamline the litigation.

- *Early stage of litigation* – This action remains in its infancy.  Discovery has barely begun; indeed, the parties have yet to even agree on search terms and custodians for e-discovery purposes, and depositions are months away.  Under the case schedule

Indeed, all of the relevant factors weigh in favor of a stay in this case.

---

[1] *See infra* at p.7.

currently in place, the claim-construction process will not conclude until April 12, 2012. The Court has not set a trial date.

Accordingly, the Court should stay this action until conclusion of the reexamination.

## III.  FACTS

### A.  DATATRAK has never acted nor suggested urgency in seeking to enforce the '087 patent.

The PTO issued the '087 patent on December 9, 2008. DATATRAK first contacted Medidata about that patent on January 18, 2011. *See* Jan. 18, 2011 Letter from McMullen to Sherif (Ex. B). On March 4, 2011, DATATRAK filed this action, asserting infringement of all 52 claims of the patent.[2] It sought no preliminary injunctive or other interim relief. Thereafter, DATATRAK withheld service for nearly six months while the parties discussed whether and how to engage in settlement efforts. During that time (and since), DATATRAK never acted with urgency or stated that exigent commercial circumstances required especially prompt action.

The parties were unable to agree on terms to govern settlement-related disclosures and meetings. DATATRAK served its complaint on June 3, 2011 – one business day before the deadline mandated by Fed. R. Civ. P. 4(m). Since then, DATATRAK has prosecuted this action leisurely. It waited approximately six weeks after Medidata served discovery requests to engage a vendor to assist with (apparently complicated) e-discovery issues. It then asked Medidata to join its motion to stay the action pending mediation. *See* E-mail from McMullen to Rosenberg dated Sep. 20, 2011 (Ex. C).

---

[2] *See* Plaintiff's Initial Infringement Contentions and Documents Production Pursuant to Local Patent Rules 3.1 and 3.2 at 2 (Ex. D). DATATRAK refused to reduce the number of asserted claims to a more manageable and typical number.

### B.  The reexamination should proceed quickly unless DATATRAK delays.

Medidata filed a request for *ex parte* reexamination of the '087 patent on October 28, 2011.  The request is voluminous – in part because it challenges each of the 52 claims DATATRAK has asserted here – and is based on five prior-art references.  *See* Request for *Ex Parte* Reexamination of U.S. Patent No. 7,464,087 (Ex. E).[3]  By rule, the PTO must decide whether to conduct a reexamination by January 30, 2012.  *See* MPEP § 2241 (determination "must be made within 3 months").[4]  In practice, however, the PTO typically takes less than two months to issue an order granting or denying the request for reexamination.  *See* Reexamination Operation Statistics at 1 (average of 1.7 months from filing to *ex parte* order) (Ex. F).  The PTO usually – *i.e.*, 92% of the time – finds a "substantial new question of patentability" and thus initiates a full reexamination proceeding.  *See Ex Parte* Reexamination Filing Data at 1 (Ex. A).

The median reexamination pendency is 20 months,[5] *see id.* at 2, but, according to PTO rules, patents involved in litigation move more quickly through the process than others.  *See* MPEP § 2261 ("Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases.").  If the litigation is stayed, "all aspects of the proceeding will be expedited to the extent possible" and "[a]ction on such a proceeding will generally take precedence to any other action taken by the examiner."  MPEP § 2286(I).  Therefore, if this Court grants Medidata's motion, the reexamination would probably be completed in less than 20 months.

Moreover, DATATRAK has some control over the duration of the reexamination.  First,

---

[3] Because the Request for Reexamination and its exhibits total hundreds of pages, we attach only some exemplary pages.

[4] The MPEP, Manual of Patent Examining Procedure (8th ed. 2001), is the official rule book used by patent examiners for all patent examinations, including *ex parte* reexaminations.

[5] The average pendency is 25.7 months.  *See Ex Parte* Reexamination Filing Data at 2.

if the PTO accepts an *ex parte* reexamination request, the patentee defends its patent without any further involvement by the requesting party.  *Id.* § 2254.  Second, the PTO has created a pilot program allowing patent owners to reduce the reexamination process by up to five months if they forgo an "owner's statement."  *See* Pilot Program for Waiver of Patent Owner's Statement in *Ex Parte* Reexamination Proceedings, 75 Fed. Reg. at 47,270 (Aug. 5, 2010) (Ex. G).[6]  Third, DATATRAK can minimize delays by promptly responding to PTO communications (*i.e.*, before the PTO's deadlines and without requesting extensions).

### C. DATATRAK's asserted claims will likely be canceled or amended.

Medidata's reexamination request demonstrates that the '087 patent is invalid under 35 U.S.C. §§ 102 and 103.  Given the dense subject matter, space does not permit a meaningful explanation of the positions and prior art on which that request is based (though Medidata will provide more information if the Court requests it).  That said, Medidata believes that the PTO will (i) almost certainly accept the request and reexamine the '087 patent; and then (ii) likely invalidate or significantly modify the patent.

The statistical evidence only bolsters that conclusion.  In particular, through June 2011:

- The PTO has **granted 92%** of ex parte reexamination requests;
- Reexamination has resulted in **claim changes 66%** of the time; and
- Reexamination has resulted in **claim cancellation or modification 77%** of the time.

There are thus compelling reasons to believe that the goals underlying the reexamination process, and the benefits on which related litigation stays are premised, will be achieved in this case.

---

[6] An owner's statement gives the patentee an opportunity to file a preliminary statement in response to a reexamination request.  But even before the pilot program (when there was no benefit to foregoing an owner's statement) only about 10% of patent owners chose to file one.  *Id.* at 47,270.

## IV. STANDARD OF REVIEW

A district court may stay litigation pending the outcome of patent reexamination through its inherent power to manage its docket. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988); *Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, No. 1:10-CV-1370, 2010 WL 4699870, at *1 (N.D. Ohio Nov. 12, 2010). As noted above, courts in the Northern District of Ohio weigh three factors in determining whether to grant such a stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Progressive*, 2010 WL 4699870, at *1 (citations omitted). Courts also may consider whether the party seeking the stay has done so in good faith or for the purpose of delay. *Id.*

The courts in this district have agreed to stay patent litigation pending the conclusion of reexamination proceedings in the vast majority of recently published cases (and in a range of factual circumstances). *See, e.g., Progressive*, 2010 WL 4699870 at *5; *PDS Electronics, Inc. v. Hi-Z Antennas*, No. 5:10–cv–02806, 2011 WL 1097745, at *3 (N.D. Ohio March 22, 2011); *Progressive Cas. Ins. Co. v. Allstate Ins. Co.*, No. 1:11CV00082, 2011 WL 1627975, at *3 (N.D. Ohio April 28, 2011); *EMSAT Advanced v. T-Mobile USA, Inc.*, No. 4:08cv00817, 2011 WL 843205 (N.D. Ohio March 8, 2011); *Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, No. 4:08CV589, 2010 WL 3239001 (N.D. Ohio Aug. 16, 2010).

## V. ARGUMENT

### A. A stay will not unduly prejudice or disadvantage DATATRAK.

"While some prejudice is inherent in any delay, this alone is not sufficient to prevent a stay. If it were, few if any patent cases would be stayed pending reexamination by the PTO." *Progressive,* 2010 WL 4699870, at *2 (citation omitted). As explained above, the length of any

- 7 -

delay pending reexamination probably will be relatively short and, in some measure, is within DATATRAK's control. Furthermore, when, as here, a plaintiff acts without urgency, there is little risk of the type of prejudice that would cut against a stay. *See Allied Erecting & Dismantling Co., Inc.*, at *2 ("Plaintiffs have to this point moved with little urgency in prosecuting the instant matter.").

In this case, there is no reason to believe that reexamination of the '087 patent will cause unusual delay. More than that, DATATRAK's conduct belies any argument that delay will unduly prejudice it. DATATRAK waited six months to serve its complaint after first contacting Medidata about the patent and did not seek a preliminary injunction.[7] Thereafter, its actions reveal no serious concern about timing. *See Ingro v. Tyco Indus., Inc.*, No. 84-C-10844, 1985 WL 1649, at *3 (N.D. Ill. May 31, 1985) ("[E]specially in light of plaintiff's own delay in initiating litigation, a stay pending completion of reexamination proceedings . . . will constitute neither undue nor unreasonable delay.").

Finally, a stay will not affect DATATRAK's ability to recover monetary damages if any of the claims survive reexamination and Medidata's accused product is found to infringe. The '087 patent was filed on July 28, 2003, and will not expire before the year 2023. Accordingly, the "prejudice" factor favors a stay.

**B.    A stay will likely simplify the issues in question.**

The next factor cuts the same way. Following reexamination, a patent claim can emerge (1) canceled, (2) modified, or (3) unmodified. A stay would simplify this action regardless of

---

[7] By deciding not to seek a preliminary injunction, DATRAK demonstrated that it is willing to accept monetary damages for Medidata's alleged infringement. If DATATRAK's patent emerges from reexamination unscathed, and if Medidata is ultimately found to have infringed, DATATRAK will be able to seek damages for the time that the reexamination was pending. *See generally Allied Erecting*, 2010 WL 3239001, at *2; *Magna Donnelly Corp. v. Pilkington N. Am., Inc.*, No. 4:06-CV-126, 2007 WL 772891, at *6 (W.D. Mich. March 12, 2007).

how the '087 patent claims emerge.

As noted above, the PTO cancels and/or modifies claims in the great majority of *ex parte* reexaminations. *Progressive*, 2010 WL 4699870, at *1 ("77% of all patents which have been reexamined since 1981 have either had all claims canceled or changes made to the claims."); *Allied Erecting*, 2010 WL 3239001, at *3 ("As courts in the Sixth Circuit have noted, it is statistically unlikely that, where multiple claims are involved, all the claims presented will survive reexamination unchanged.") (citations omitted). Here, DATATRAK has asserted, and Medidata has sought reexamination of, all 52 claims of the '087 patent; as such, the patent will probably emerge from the reexamination quite different than it is now.

If the PTO cancels one or more patent claims, it will greatly simplify the litigation. *Progressive*, 2010 WL 4699870, at *4. In that case discovery, claim construction, and validity issues would likely be less complicated and costly. *Guthy-Renker Fitness LLC v. Icon Health & Fitness*, No. CV-97-7681, 1998 WL 670240, at *2–3 (C.D. Cal. July 15, 1998). Likewise, if the PTO modifies one or more claims, a stay will ensure that the parties and the Court do not devote resources to discovery and disputes concerning the original, unmodified claims. *See Progressive*, 2010 WL 4699870, at *4. Finally, "[e]ven if all the claims are confirmed by the PTO, the record of reexamination is still likely to be entered at trial, reducing the length and complexity of the litigation." *Id.* (citation omitted).

Courts have noted additional, related benefits of staying litigation in cases like this. For example, absent a stay, if the PTO changes the claim language of the '087 patent, the parties may need to engage in supplemental discovery to cover new infringement and invalidity theories. *Guthy-Renker*, 1998 WL at *2. Similarly, the Court may be required to reevaluate construction of modified claim terms, thereby duplicating its efforts unnecessarily. And, the mere risk of

shifting claim language is likely to decrease predictability of the parties' positions and may deter settlement.  *Magna Donnelly*, 2007 WL 772891, at *2.

The stay Medidata requests will therefore simplify this action regardless of the outcome of the reexamination.  Indeed, this Court has emphasized this factor when issuing stays in cases that are much more difficult than this.  *See 01 Communique Lab., Inc. v. Citrix Sys., Inc.*, No. 06-CV-0253, 2008 WL 696888, at *2-4 (N.D. Ohio Mar. 12, 2008) ("Although the issue of prejudice to Communique weighs against a stay, a stay would simplify the issues and trial of the case, and the litigation is not so advanced as to weigh against granting a stay.  However, in light of the absence of dilatory motives, the court finds that the alleged prejudice to Communique is not so great as to outweigh the benefit to the parties, and to the court, in granting a stay.").  Accordingly, the "simplification" factor favors a stay.

### C. A stay is appropriate because litigation has just begun.

The last factor leads to the same conclusion.  This case is less than six months old.  Discovery has barely begun and the trial date has not been set.  The cutoff date for requesting a stay pending reexamination is at some future, unknown date "within thirty (30) calendar days of the Court's claim construction ruling," LPR 3.11(c), which is scheduled for April 12, 2012.  *See* D.I. 29, Ex. A at 1.  Thus, Medidata filed this motion at least six months before the deadline provided in the local patent rules.  Courts in this district have granted stays at much later stages of litigation.  *See e.g., Emast Advanced v. T-Mobile USA, Inc.*, No. 4:08-CV-00817 (Mar. 8, 2011) (granting stay even though "Defendant's motion came just ten days before the close of fact discovery"); *Allied Erecting*, 2010 WL 3239001, at *4 (granting stay even though "Defendants filed the instant motion two months prior to the date set for the close of fact discovery").

Medidata has not engaged in dilatory tactics, so that consideration plays no role here.  A stay of litigation is sometimes denied if the moving party has unnecessarily delayed in filing for

reexamination or in seeking a stay after filing its reexamination request. *See Citrix*, 2008 WL 696888, at *3. But in this case Medidata filed its reexamination request less than six months after DATATRAK served the complaint and promptly following the unsuccessful mediation.[8] If anything, Medidata's prompt action in both requesting reexamination and seeking a stay supports granting this motion. *See Progressive*, 2010 WL 4699870, at *4.

Accordingly, the "timing" factor – like the other factors – weighs in favor of a stay.

## VI. CONCLUSION

All three factors weigh in favor of granting a stay pending reexamination of the '087 patent. For the reasons stated above, this Court should grant Medidata's motion for a stay of litigation pending reexamination of the '087 patent.

---

[8] Stays have been granted to defendants who have displayed far less diligence. *See, e.g., Grayling Indus., Inc. v. GPAC, Inc.*, 1991 WL 236196, at *3 (N.D. Ga. Mar. 25, 1991) (granting stay despite a two year delay before requesting reexamination and even though it was "not clear that Plaintiffs had good reason for the delay").

DATED:  October 28, 2011

        By: */s/ David A. Schaefer*
        David A. Schaefer
        das@mccarthylebit.com
        McCARTHY, LEBIT, CRYSTAL &
        LIFFMAN CO., LPA
        101 West Prospect Avenue, Suite 1800
        Cleveland, Ohio  44115
        (216) 586-5479 (Telephone)
        (216) 696-1210 (Facsimile)

        Janine A. Carlan
        carlan.janine@arentfox.com
        Aziz Burgy
        burgy.aziz@arentfox.com
        Arent Fox LLP
        1050 Connecticut Avenue, NW
        Washington, DC 20036-5339
        (202) 857-6000 (Telephone)
        (202)857-6395 (Facsimile)

        Attorneys for Defendant
        Medidata Solutions, Inc.

## CERTIFICATE OF COMPLIANCE WITH LR 7.1(f)

Pursuant to LR 7.1(f), this case is on a complex management track. I certify that ***Medidata's Memorandum in Support of Its Motion to Stay Litigation Pending Ex Parte Reexamination of the Patent-in-Suit*** adheres to the page limitations set forth in LR 7.1(f).

                                        */s/ David A. Schaefer*

**CERTIFICATE OF SERVICE**

I certify that a copy of (1) ***Medidata's Motion to Stay Litigation Pending Ex Parte Reexamination of the Patent-in-Suit*** and (2) ***Medidata's Memorandum in Support of Its Motion to Stay Litigation Pending Ex Parte Reexamination of the Patent-in-Suit*** were electronically filed on October 28, 2011.  Notice of filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                              */s/ David A. Schaefer*