### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DATATRAK International, Inc.,

        Plaintiff,

    v.

Medidata Solutions, Inc.,

        Defendant.

Case No.  1:11-cv-00458-PAG

Hon. Patricia A. Gaughan

### MEDIDATA'S REPLY MEMORANDUM IN SUPPORT
### OF ITS MOTION TO STAY LITIGATION PENDING
### *EX PARTE* REEXAMINATION OF THE PATENT-IN-SUIT

## I.    INTRODUCTION

DATATRAK's opposition to Medidata's motion to stay[1] rants against all sorts of perceived injustices but ultimately articulates no convincing reason why the Court should not grant the motion. Indeed, even though it badly distorts the facts and skews the governing law, DATATRAK cannot avoid what application of the three-factor test here compels. If a stay pending reexam is appropriate in *any* case, it is appropriate in this case.

Each of the three relevant factors overwhelmingly favors a stay here. DATATRAK has not demonstrated that undue prejudice or clear tactical disadvantage will result from a stay, the stay would almost certainly simplify issues in this litigation, and the action is in its infancy. As shown below, none of DATATRAK's contrary arguments withstands scrutiny.[2] Accordingly, the Court should stay this litigation until the resolution of Medidata's pending request that the U.S. Patent and Trademark Office ("PTO") conduct an *ex parte* reexamination of the patent-in-suit.

## II.    DATATRAK MISCHARACTERIZES THE APPLICABLE LEGAL STANDARDS.

### A.    Congress contemplated that litigation regularly would be stayed during *ex parte* reexamination.

DATATRAK asserts that Congress did not intend for courts to stay litigation during *ex parte* reexamination proceedings. In support, it relies on the absence of an explicit stay

---

[1] DATATRAK's Opposition to Medidata's Motion to Stay Litigation Pending *Ex Parte* Reexamination of the Patent-in-Suit (herein "Pl's Opp'n").

[2] Many of DATATRAK's flawed arguments appear borrowed – virtually verbatim, in fact – from a brief filed in this Court by a plaintiff opposing a stay motion that DATATRAK's counsel had filed. *Compare* Pl's Opp'n at 7-8 *with* Progressive Casualty Insurance Company's Opposition to Liberty Mutual Defendants' Renewed Motion to Stay the Patent Infringement Claims Against Them Pending *Ex Parte* Reexamination of the Patents-in-Suit by the United States Patent and Trademark Office, 1:11-cv-00082-BYP, D.I. 78 at 4-6 (Ex. A). The Court granted the motion on facts closely analogous to those here, despite the fact that the party that DATATRAK's counsel represented was a direct competitor of the plaintiff who opposed the stay.

provision parallel to that applicable to *inter partes* reexamination, which is found at § 315 of the

Patent Act. *See* Pl's Opp'n at 4.

DATATRAK's statutory interpretation is untenable. While debating the Patent Act in

committee, Congress spoke to this precise issue and summarily dismissed the argument, stating:

> The bill does not provide for a stay of court proceedings. *It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court* to prevent costly pretrial maneuvering which attempts to circumvent reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of the United States patents in an efficient and relatively inexpensive manner.

H.R. Rep. No. 1037(1), at 1 (1980), 1980 U.S.C.C.A.N. 6460, 6463 (emphasis added),

*quoted by Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

The Federal Circuit has reiterated the committee's view, declaring in an *ex parte*

reexamination setting that "[t]he [Congressional] committee was correct. Courts have inherent

power to manage their dockets and stay proceedings, including the authority to order a stay

pending conclusion of PTO reexamination." *Ethicon v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir.

1988) (internal citation omitted); *see also Gould*, 705 F.2d at 1342. Accordingly, numerous

federal district courts, including this one, have stayed litigation pending *ex parte* reexamination.

*See, e.g., Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc.*, No. 11–176, 2011 WL

5523315, at *1 (D. Del. Nov. 14, 2011); *Dura Global Techs., LLC v. Magna Int'l Inc.*, No. 11–

cv–10551, 2011 WL 5039883, at *1 (E.D. Mich. Oct. 24, 2011); *Progressive Cas. Ins. Co. v.*

*Safeco Ins. Co.*, No. 1:10-CV-1370, 2010 WL 4699870, at *1 (N.D. Ohio Nov. 12, 2010).

Indeed, some courts have "a liberal policy in favor of granting motions to stay proceedings

pending the outcome of reexamination proceedings." *ASCII Corp. v. STD Entm't USA, Inc.*,

844 F. Supp 1378, 1381 (N.D. Cal. 1994); *see e.g., Lentek Int'l, Inc. v. Sharper Image Corp.*,

169 F. Supp. 2d 1360, 1362 (M.D. Fla. 2001) ("As several courts have noted, the sponsors of the patent reexamination legislation clearly favored the liberal grant of stays by the district courts when patents are submitted for reexamination as a mechanism for settling disputes quickly and less expensively and for providing the district courts with the expertise of the patent office").[3]

In other words, DATATRAK is wrong. It is well-settled that courts may, and very often do (for good reason), stay litigation to accommodate *ex parte* reexamination.

**B.     DATATRAK makes too much of *Landis*.**

DATATRAK's heavy reliance on the Supreme Court's decision in *Landis* is similarly misplaced. In reality, *Landis* favors a stay here.

---

[3] Not only did Congress intend litigation to be stayed during *ex parte* reexamination, it further contemplated that the *PTO* would be the best forum for efficiently and economically handling invalidity issues present in reexamination. Indeed, Congress intended that the courts would rely on the PTO's reexamination procedure because it believed that the PTO "could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases . . . [and] the procedure would allow courts to refer patent validity questions to the expertise of the Patent Office." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985). Courts have confirmed that shifting validity issues to the PTO has many advantages including the following:

- All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

- Many discovery problems relating to prior art can be alleviated by the PTO examination.

- In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

- The outcome of the reexamination many encourage a settlement without the further use of the Court.

- The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

- Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

- The cost will likely be reduced both for the parties and the Court.

*See, e.g., Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 1987 WL 6314, at *1-2 (N.D. Ill. Feb. 2, 1987).

The upshot of *Landis* is that a district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). But DATATRAK attempts to stretch the decision further than its facts reasonably allow, arguing that "a stay of one proceeding in favor of another proceeding should only be granted in 'rare circumstances.'" Pl's Opp'n at 5 (citing *Landis*, 299 U.S. at 256). What DATATRAK fails to disclose is that *Landis* involved delaying separate judicial proceedings involving entirely different parties. *See Landis*, 299 U.S. at 255 ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). Here, by contrast, the proceedings at issue do not affect disinterested parties, and a stay therefore does not implicate the concern underlying *Landis*. Indeed, as *Landis* counsels, the district court has wide discretion in deciding whether to grant a stay. It is hardly an abuse of that discretion to grant a stay where, as here, allowing the reexamination to proceed first would benefit both parties to this action by avoiding superfluous litigation in the (likely) scenario in which the reexamination is granted and one or more patent claims is amended or canceled.

## C.    The district court, not the Federal Circuit, has discretion over stays.

Contrary to DATATRAK's suggestion, nothing in the Federal Circuit's precedent cuts against that conclusion. In particular, DATATRAK argues that Federal Circuit case law neither requires nor encourages staying patent litigation pending reexamination. Pl's Opp'n at 5. While technically correct, those points are utterly unremarkable.

DATATRAK concedes that "courts in this district have granted stays pending reexamination in a majority of recently published cases[,]" but then qualifies its concession by noting that "no *per se* rule [in favor of a stay] exists[.]" Pl.'s Opp'n at 5. In so doing, DATATRAK cites several cases that indicate that courts should not "automatically" grant a stay.

DATATRAK's argument is nothing more than a straw man because Medidata does not contend that any such *per se* rule exists. Rather, Medidata contends that a stay is appropriate here based on the facts of this case, as applied to the controlling legal principles.

DATATRAK's argument that Federal Circuit law does not "encourage" a stay of litigation pending reexamination is likewise of no consequence because the discretion to grant stays undisputedly resides squarely with the district court. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988). DATATRAK nevertheless cites three cases for the unremarkable proposition that the Federal Circuit has held stays were improperly granted in certain circumstances. Pl's Opp'n at 5 citing *Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001); *Ethicon, Inc.*, 849 F.2d at 1426-27; *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998). Given that each is easily distinguishable from this case, DATATRAK makes no attempt to apply any of these three decisions to the facts here.

In *Viskase*, the district court held a *Markman* hearing, construed the claims, decided various summary judgment motions, and held a jury trial. *Viskase*, 261 F.3d at 1319. It was only after trial that the accused infringer sought reexamination of some of the patents-in-suit. *Id.* at 1327-28. Not surprisingly, on appeal the Federal Circuit affirmed the district court's denial of the accused infringer's motion to stay the case. *Id.* at 1328.

The facts in *Ethicon* are even further removed from those of this case. There, the issue was not whether the stay of a district court litigation pending reexamination was proper, but rather, *whether the PTO's decision to stay a reexamination* was proper. *Ethicon*, 849 F.2d at 1426.

*Slip Track*, too, involved circumstances far removed from those at issue here. In that case, patentee Slip Track sued Metal Lite for infringement of United States Patent No. 5,127,760

(the "Brady patent"), which issued on July 7, 1992. *Slip Track*, 159 F.3d at 1338. Metal Lite owned another patent – United States Patent No. 5,127,203 (the "Paquette patent") – which had also issued on July 7, 1992. *Id.* The Brady and Paquette patents claimed identical subject matter. *Id.* As a result, Slip Track filed an interfering patents suit in the district court against Metal Lite under 35 U.S.C. § 291 seeking priority over the Paquette patent. *Id.* at 1339. Metal Lite subsequently requested reexamination of the Brady patent in light of the Paquette patent and filed a motion to stay the district court proceeding, which was granted. *Id.* at 1338-39. The Federal Circuit held that the district court's stay was improper because a foreseeable consequence of staying Slip Track's interfering patents suit in favor of the reexamination proceeding would be that Slip Track would be unable to challenge priority of invention in any forum. *Id.* at 1340.

Here, (1) the Court has not yet construed the relevant patent claims, decided summary judgment motions, or held a jury trial (*i.e.*, *Viskase*); (2) the case does not involve the PTO's decision to stay the reexamination (*i.e.*, *Ethicon*); and (3) there is no interfering patents suit under 35 U.S.C. § 291 (*i.e.*, *Slip Track*). Each of the Federal Circuit cases cited by DATATRAK is therefore inapposite.

## III.    ARGUMENT

### A.    A stay will not unduly prejudice DATATRAK.

DATATRAK argues that it will suffer irreparable harm during the period in which the reexamination is pending because of Medidata's direct competition and increasing market share,

- 7 -

and because DATATRAK cannot exclude Medidata from using the patented invention.[4]  Pl's

Opp'n at 7-8.  In support of its argument, DATATRAK cites several decisions of courts outside

this district.  Pl's Opp'n at 7-8.  It avoids, however, this Court's decision properly rejecting

precisely the same argument.  *See Progressive*, 2010 WL 4699870, at *3 (granting stay despite

fact that patentee and defendants were competitors because "the reality is that proceeding with

the litigation would not avoid this harm as defendants would presumably continue to develop and

promote their [accused products] throughout the litigation."); *see also Allied Erecting and*

*Dismantling Co., Inc., v. Genesis Equip. and Mfrg., Inc.*, No. 4:08-CV-589, 2010 WL 3239001,

at*6-7 (N.D. Ohio Aug. 16, 2010) ("While some prejudice to Plaintiffs is inherent in any delay,

this alone is not sufficient to prevent a stay.  If it were, few if any patent cases would be stayed

pending reexamination by the PTO.").  Because "[l]itigation itself is typically lengthy and

involves unforeseen delays," the potential, but uncertain, degree of delay incident to

reexamination proceedings does not meaningfully impact the analysis here.  *See Progressive*,

2010 WL 4699870, at * 3.

Moreover, though DATATRAK downplays it, the fact that it did not seek a preliminary

injunction here is highly significant and largely eviscerates its claim of supposed prejudice.  *See*

*Progressive*, 2010 WL 4699870, at * 3 (monetary damages would adequately compensate

patentee, including with respect to injury during period in which reexamination is pending); *see*

*also Allied Erecting*, 2010 WL 3239001, at*2 (same).  Though not a *per se* "prerequisite" to

---

[4] To support its claim of undue prejudice, DATATRAK offers only the totally biased, uncorroborated, and speculative declaration of its Vice President of Finance & Quality and Treasurer. *See, e.g.*, Declaration of Jennifer Fox, ¶ 4 ("once customers adopt a technology platform *they tend to* disfavor changing to a different system").  Such testimony is insufficient to establish irreparable harm. *See, e.g.*, *Verizon Cal., Inc. v. Peevey*, No. C03-2838, 2004 WL 3550113, at *3 (N.D. Cal. Jan. 13, 2004) (denying injunction where loss of customers or goodwill was speculative), *vacated on other grounds*, 413 F.3d 1069.  Notwithstanding the foregoing, Ms. Fox's declaration also improperly presupposes that Rave infringes, which it does not.

demonstrating undue prejudice sufficient to avoid a stay pending reexamination, a request for preliminary injunctive relief is an important indicia of the sincerity of a plaintiff's position on that issue.[5] In the absence of a prior request for such interim relief, DATATRAK's claim that it "continues to suffer irreparably by Medidata operating in the market unconstrained during the pendency of this case" rings hollow. Declaration of Jennifer Fox, ¶ 4. Accordingly, DATATRAK has demonstrated neither the type nor the degree of prejudice that would cut against issuing a stay here.[6]

Nor would a stay present any "tactical disadvantage" for DATATRAK. Unlike in some of the precedent, Medidata did not file the reexamination after an unfavorable claim construction or an adverse summary judgment ruling. *See, e.g., Allied Erecting*, 2010 WL 3239001, at*2. Rather, it filed the reexamination at the outset of the case, and upon conclusion of an unsuccessful mediation. And, Medidata filed its motion to stay on the same day as it filed its reexamination request.

It is DATATRAK who has been dilatory; indeed, the record is flatly inconsistent with its argument that delay caused by a reexamination will irreparably harm the plaintiff here.[7] The following facts are exemplary, not exhaustive:

---

[5] *See also Pac. Bioscience Labs., Inc. v. Pretika Corp.*, 760 F. Supp. 2d 1061, 1067 (W.D. Wash. 2011) ("PBL has not sought any form of preliminary injunctive relief in this action, which further undermines its position and suggests that a stay would not be unduly prejudicial."); *JAB Distribs., LLC v. London Luxury, LLC*, No. 09-C5831, 2010 WL 1882010, at *3 (N.D. Ill. May 11, 2010).

[6] DATATRAK argues under *Landis* that Medidata failed to identify harm going forward. Pl's Opp'n at 6-7. DATATRAK is wrong for at least three reasons. First, as discussed above in Section II.B., *Landis* is inapposite. Second, as DATATRAK itself concedes, the critical consideration in cases like this is harm to the *non-moving* party. Pl's Opp'n at 5. Third, *assuming arguendo* that *Landis* is applicable, Medidata described in its opening brief the harm that would result absent a stay. *See, e.g.*, D.I. 30-1 at 8-10.

[7] *See Ingro v. Tyco Indus., Inc.*, No. 84-C-10844, 1985 WL 1649, at *3 (N.D. Ill. May 31, 1985) ("[E]specially in light of plaintiff's own delay in initiating litigation, a stay pending completion of reexamination proceedings . . . will constitute neither undue or unreasonable delay.").

- DATATRAK filed its provisional patent application in July 2002 and the patent-in-suit subsequently issued on December 9, 2008. The accused product, Medidata Rave, has been sold ever since DATATRAK filed its patent application, with essentially the same features.

- After waiting over two years to file suit, DATATRAK then delayed service of the complaint for six months after first contacting Medidata. D.I. 30-1 at 4.

- When the Court encouraged the parties to explore settlement through mediation, DATATRAK immediately suggested that the parties continue all case deadlines. *See* June 28, 2011 Draft Proposal for Court-Supervised Mediation at 3 (Ex. B). In response, Medidata requested that the mediation and the litigation proceed in parallel tracks. *See* June 29, 2011 Draft Proposal for Court-Supervised Mediation at 1 (Ex. C).

- DATATRAK has requested extension of time to respond to discovery. *See* August 19, 2011 Email from G. Yanchar to A. Burgy (Ex. D).

**B.      A stay will likely simplify the case.**

As the vast majority of courts (including this Court) have recognized, a stay pending completion of patent reexamination proceedings carries with it a strong likelihood of streamlining, simplifying, and limiting the resources otherwise needed to resolve infringement/invalidity issues. Swimming against that tide, DATATRAK presents the following three arguments in support of its position that such simplification is unlikely to result from a stay here: (1) Medidata presented no evidence suggesting that the patent-in-suit will be held invalid; (2) Medidata distorted PTO statistics regarding *ex parte* reexamination; and (3) reexamination will not resolve any and/or the majority of the issues in the case. Pl's Opp'n at 8-11. Again, DATATRAK is wrong on all counts.

**1.      Medidata does not need to prove the patent-in-suit is invalid.**

DATATRAK'S first contention – that a stay is unwarranted because Medidata has not demonstrated that the patent-in-suit is invalid – is, quite frankly, specious. Pl's Opp'n at 8. No such proof is required to support a stay. As DATATRAK itself admits, district courts weigh

three factors when determining whether to grant a stay, none of which encompass proof of invalidity or likelihood of success of the reexamination proceeding. Not surprisingly, DATATRAK cites no authority in which such evidence has been held relevant, let alone significant.[8]

**2. Medidata's motion accurately characterizes *ex parte* reexamination statistics.**

Next, DATATRAK argues that only 11% of the patents reexamined in the PTO result in all claims being cancelled, and that such a low percentage does not justify a stay. Pl's Opp'n at 9. DATATRAK further argues that there is a greater chance that all claims will be confirmed than all claims cancelled. *Id.* However, whether all claims are cancelled during a reexamination, or whether there is a greater likelihood of confirmation versus cancellation, are not especially relevant considerations here. Rather, as this Court has recognized repeatedly, the most significant question is whether the PTO will likely invalidate or modify the claims. *See Progressive*, 2010 WL 4699870, at *4; *see also Allied Erecting*, 2010 WL 3239001, at*3; *see also 01 Communique Lab. Inc. v. Citrix Sys., Inc.*, No. 06-cv-0253, 2008 WL 696888, at *2 (N.D. Ohio Mar. 12, 2008).

The answer to that question is a resounding yes. Under the latest statistics, 77% of patents reexamined since 1981 fall into that category.[9] Therefore, it is likely that at least some of the patent's claims will be changed upon reexamination. *Progressive*, 2010 WL 4699870, at *4.

---

[8] Even if such proof were required, Medidata supplied it by citing and submitting portions of its reexamination request in its opening brief. D.I. 30-1 at 5 n.3; D.I. 30-6. Because the Request for Reexamination and its exhibits total hundreds of page, Medidata submitted only excerpts. Medidata will submit the entire Request if the Court requests.

[9] Contrary to DATATRAK's accusation, there is nothing misleading about the statement in Medidata's opening brief that the PTO will likely invalidate or modify some of the patent claims. The fact is that "77% of all patents . . . reexamined since 1981 have either had all claims canceled or changes made to the claims." *Progressive*, 2010 WL 4699870, at *4.

In turn, "if claims are canceled or changed . . . it would simplify the issues pertaining to [Medidata's] arguments on invalidity based on prior art." *Progressive*, 2010 WL 4699870, at *4.

DATATRAK further argues that a change to one claim "[a]t worst . . . might require limited supplemental claim construction" and that the Court and the parties can deal with that as necessary. Pl's Opp'n at 9. DATATRAK's cavalier approach gives short shrift to the reality that a change to even one claim can have a profound impact. In particular, the patent-in-suit has 52 lengthy claims, of which only 5 are independent claims. Thus, each independent claim has multiple dependents. If, for example, the reexamination results in an amendment to independent claim 6, then 19 other claims would be affected. Likewise, and contrary to DATATRAK's position, an amended claim probably would result in substantially different claim constructions. Further still, a change to one claim would also likely impact the non-infringement analysis, which could require supplemental claim construction, supplemental fact and expert witness depositions, and amended expert reports (depending on the stage of the case).

### 3. Reexamination will simplify some, if not all, of the issues in the case.

DATATRAK argues that because Medidata chose to initiate an *ex parte* reexamination, which does not result in estoppel, Medidata may repeat here the invalidity arguments presented in the reexamination, thereby nullifying the simplification effect. Pl's Opp'n at 10. DATATRAK further argues that because reexamination addresses only invalidity based on prior patents and printed publications, other types of invalidity and the issue of non-infringement will remain. Pl's Opp'n at 10-11.

DATATRAK's arguments are for Congress, not this Court. The law defines the scope and contours of the different types of patent reexamination proceedings. As shown above, stays are often issued in connection with *ex parte* reexaminations, despite the absence of estoppel

effect and despite the limitations on invalidity arguments on which a party may rely in such

cases.  As one court recently noted:

> If Congress had thought that a third-party requester in an *ex parte* reexamination
> would receive two bites of the apple by being allowed to assert invalidity
> arguments in a later patent infringement suit, then it could have estopped the party
> in the same way that it does for *inter partes* reexaminations.  Congress chose not
> to. . . .  Congress countenanced a scheme in which a patent's validity may come
> under attack in both a courtroom and the [US]PTO.

*Pac. Bioscience Labs., Inc.*, 760 F. Supp. 2d at 1065, n.3 (internal citations omitted).  Moreover,

if all the claims are confirmed by the PTO, DATATRAK may enter the record of reexamination

at trial, "reducing the length and complexity of the litigation." *Progressive*, 2010 WL 4699870,

at *4.  If, on the other hand, all the claims are cancelled, all of the issues in the case including

infringement would become moot.[10]

## C.  Litigation is at its infancy.

Unable to rebut the facts that discovery has just begun and no trial date is set,

DATATRAK tries to blame Medidata for the fact that this litigation has not progressed further.

Pl's Opp'n at 11.  Specifically, it accuses Medidata of "repeated (but unfulfilled) promises to

disclose how Rave operates, and its conduct leading up to and during mediation" as well as a

litany of other bad things.  *Id.*  None of the aspersions DATATRAK casts bear meaningfully on

the matter at hand – that is, whether this action should be stayed until conclusion of the pending

---

[10] Citing *Magna Carta Holdings, LLC v. NextGen Healthcare Info Sys., Inc.*, No. 1:08-cv-07406,
DATATRAK faults Medidata for not volunteering to forego its reexamination prior art in this case, which
it claims that courts require as a condition of a litigation stay in this context.  Pl's Opp'n at 10.
DATATRAK grossly mischaracterizes the holding of *Magna Carta*.  In *Magna Carta*, the court did not
require the defendants to forego the reexamination prior art; rather, the defendants *stipulated* to doing so.
Pl's Opp'n at Exh. F.

reexamination proceeding – so we will not deepen the distraction.[11] That said, in the event the Court is interested, and for the record, we briefly note in Exhibit E a few particularly egregious misstatements/mischaracterizations with which Medidata takes issue.

With respect to the relevant facts, the reality is that discovery has barely begun and no trial date is set. The parties have not yet: (1) finalized e-discovery search terms; (2) exchanged proposed claim constructions; (3) participated in a *Markman* hearing or submitted claim construction briefing; (4) filed summary judgment motions; (5) taken depositions; or (6) served invalidity/validity contentions. Accordingly, this factor weighs heavily in favor of granting a stay.

**D.    DATATRAK's request for alternative relief is unnecessary.**

**1.    Medidata's reexamination motion is not premature.**

Citing no authority from this jurisdiction, DATATRAK argues that Medidata's motion to stay is premature because the PTO has not granted Medidata's request for reexamination. Pl's Opp'n at 12. The Court rejected the same argument in the *Progressive* case. *Progressive*, 2010 WL 4699870, *4.[12] As in *Progressive*, discovery here is at an early stage. The PTO will likely

---

[11] *See, e.g.*, Pl's Opp'n at 1-4. For example, DATATRAK implies that Medidata did not negotiate in good faith during the mediation because supposedly "it refused to put *any settlement offer whatsoever* on the negotiation table." Pl's Opp'n at 3. (emphases in original). Notwithstanding the irrelevance of the point here, and as counsel have discussed since the mediation process ended, Medidata's recollection of the relevant discussions differs from DATATRAK's. Medidata made its settlement position – including a specific monetary range within which a deal might be possible – perfectly clear while the parties were working with the third-party neutral in Cleveland.

[12] Other courts have rejected the argument as well. *E.g.*, *Aten Intern. Co., Ltd v. Emine Technology Co., Ltd.*, No. SACV 09-0843 AG, 2010 WL 1462110, *6–*8 (C.D. Cal. Apr. 12, 2010); *Pactool Intern. Ltd. v. Dewalt Indus. Tool Co.*, No. C06-5367, 2008 WL 312677 (W.D. Wash. Feb. 1, 2008); *Sorensen ex rel. Sorensen Research and Development Trust v. Black and Decker Corp.*, No. 06-CV-1572, 2007 WL 2696590 (S.D. Cal. Sept. 10, 2007); *Robert H. Harris Co., Inc. v. Metal Mfg. Co., Inc.*, No. J–C–90–179, 1991 WL 217666 (E.D. Ark. Jun. 21, 1991).

decide whether to reexamine the patent by January 27, 2012.[13] The statistics indicate that the

PTO typically takes 1.7 months from filing to *ex parte* order, thereby likely resulting in a

decision by mid-to-late December.[14] D.I. 30-7 at 2. In either event, should the PTO decide to

deny the request, the delay of several weeks will be insignificant to the overall course of this

action.[15]

### 2.     A stay is appropriate even in the context of *ex parte* reexaminations.

DATATRAK also suggests that the Court should grant Medidata's motion only on the

condition that Medidata be estopped from raising any defense it could have raised in the

reexamination. *Id.* Unfortunately for DATATRAK, the law permits parties like Medidata to file

an *ex parte* reexamination request and thereafter to renew in the district court proceeding any

defenses made before the PTO during reexamination. As noted above, the appropriateness of

doing so is a question for Congress, not this Court, and a stay pending reexamination carries a

range of likely efficiencies notwithstanding this possibility. DATATRAK proffers no authority

supporting its request, and we are not aware of any. The Court should deny it.

### 3.     The entire case should be stayed until the PTO completes its review.

Finally, DATATRAK argues that discovery on issues that supposedly do not overlap

with those in the reexamination (*e.g.*, infringement and damages) should proceed in parallel with

---

[13] In its opening brief, Medidata mistakenly stated January 30, 2012 as the due date for the PTO to decide whether to reexamine the patent-in-suit. D.I. 30-1 at 5. Unlike the Federal Rules of Civil Procedure, the PTO rules require action on the *preceding* day if the due date falls on a Saturday, Sunday, or legal holiday. Manual of Patent Examining Procedure § 2241. Therefore, because January 28, 2012 falls on a Saturday, the MPEP requires the PTO to act by Friday, January 27, 2012.

[14] Four days before filing its opposition, DATATRAK agreed to waive its right to file a patent owner's statement under 35 U.S.C. § 304, which will likely accelerate the PTO's decision of whether to reexamine the patent-in-suit. November 10, 2011 *Ex Parte* Reexamination Interview Summary (Ex. F).

[15] DATATRAK alternatively argues that the Court should wait until the first Office Action before deciding the motion. Pl's Opp'n at 12. The time from filing to first Office Action is approximately 5.7 months. D.I. 30-7 at 2. Waiting until the first Office Action will not resolve the concerns regarding conserving resources because the claims scope will likely change based on amendments and arguments by DATATRAK in response to this Office Action.

reexamination. Pl's Opp'n at 13. This argument is based on a false premise, however, because the outcome of reexamination will likely affect infringement and damages issues, as well as shed light on the validity and scope of the patent-in-suit. Indeed, the arguments DATATRAK will likely need to make in order to defend its patent will be directly relevant, and possibly dispositive, on claim construction, infringement, and, in turn, damages. And, as a practical matter, separating issues likely to be impacted by the result of the reexamination from other issues would almost certainly give rise to a range of ancillary disputes.

Nevertheless, armed with its false premise, DATATRAK argues that it may lose access to third-party discovery because third parties have no obligation to preserve documents. Pl's Opp'n at 13. Here, DATATRAK identifies discovery related to the "interoperability" of Rave with other applications and data sources as a particular concern. DATATRAK's argument is without merit because it (i) is utterly hypothetical and (ii) incorrectly assumes that Medidata does not itself have any information that would be relevant on that issue.

DATATRAK further argues that the stay should last only until the PTO completes its review exclusive of any appeal to the BPAI or the Federal Circuit. Pl's Opp'n at 13-14. Here, Medidata agrees. Once the PTO decides to reexamine the patent-in-suit, the duration of the reexamination is largely within the PTO's and DATATRAK's control. More importantly, however, only the patent owner can appeal the PTO's decision in an *ex parte* reexamination. 35 U.S.C. § 306. Therefore, if DATATRAK decides to forego its right of appeal and subsequently receives its reexamination certificate under 35 U.S.C. § 307, then Medidata agrees that the stay should be lifted.

## IV.     CONCLUSION

Accordingly, for the reasons discussed above and in its opening brief, Medidata's motion should be granted.

DATED:  November 23, 2011

By:    */s/ Aziz Burgy*
David A. Schaefer
das@mccarthylebit.com
McCARTHY, LEBIT, CRYSTAL &
LIFFMAN CO., LPA
101 West Prospect Avenue, Suite 1800
Cleveland, Ohio  44115
(216) 586-5479 (Telephone)
(216) 696-1210 (Facsimile)

Janine A. Carlan
carlan.janine@arentfox.com
Aziz Burgy
burgy.aziz@arentfox.com
Arent Fox LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5339
(202) 857-6000 (Telephone)
(202)857-6395 (Facsimile)

Attorneys for Defendant
Medidata Solutions, Inc.

## CERTIFICATE OF COMPLIANCE WITH LR 7.1(f)

Pursuant to LR 7.1(f), this case is on a complex management track. I certify that ***Medidata's***

***Reply Memorandum in Support of Its Motion to Stay Litigation Pending Ex Parte***

***Reexamination of the Patent-in-Suit*** adheres to the page limitations set forth in LR 7.1(f).


*/s/ Aziz Burgy*

## CERTIFICATE OF SERVICE

I certify that a copy of (1) *Medidata's Reply Memorandum in Support of Its Motion to Stay Litigation Pending Ex Parte Reexamination of the Patent-in-Suit* were electronically filed on November 23, 2011.  Notice of filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Matthew Duble

- 19 -