**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

DATATRAK INTERNATIONAL, INC.,

                Plaintiff,

    v.

MEDIDATA SOLUTIONS, INC.,

                Defendant.

Case No. 1:11-cv-00458-PAG

Hon. Patricia A. Gaughan

**DEFENDANT MEDIDATA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF DOCUMENTS REQUIRED BY L. P. R. 3.2 (a) AND (b),
TO ENFORCE THE COURT'S JUNE 28, 2011 ORDER, AND FOR SANCTIONS**

## I.    INTRODUCTION

Local Patent Rule 3.2 (a) and (b) ("L. P. R.") and the Court's June 28, 2011 Case

Management Order required Datatrak to produce documents relating to the conception and

reduction to practice of each invention claimed in U.S. Patent No. 7,464,087 ("the '087 Patent")

and documents relating to potential statutory bars under 35 U.S.C. § 102 (b) by July 12, 2011.

(D.I. 11).  To date, Plaintiff Datatrak International Inc. ("Datatrak") has not produced a single

document responsive to L. P. R. 3.2 (a) or (b), and refuses to confirm that it has performed a

reasonable search for the documents and does not believe they exist. Medidata Solutions, Inc.

("Medidata") hereby moves for an order compelling Datatrak to comply with  L. P. R. 3.2 (a)

and (b) and the Case Management Order and for sanctions.

## II.    BACKGROUND

On March 4, 2011 Datatrak commenced this action by filing its complaint alleging that

Medidata infringes the '087 Patent.  The '087 Patent claims a system for unifying data from a

plurality of heterogeneous databases. (D.I. 1-1, '087 Patent Abstract).  On June 28, 2011 the

Court entered a Case Management Order for this action ("Order"). (D.I. 11.)  That Order required Datatrak to comply with Local Patent Rule 3.2 (a) and (b) by July 12, 2011. (*Id.*)

On December 16, 2011 the Court stayed this action pending reexamination of the '087 Patent.  (D.I. 36.) On September 9, 2014, the Court lifted that stay. (D.I. 50.)  Despite Medidata's diligent efforts before the stay was granted and after the stay was lifted, including numerous letters and a meet and confer, to date Datatrak has not complied with the Case Management Order and has not produced any documents responsive to L. P. R. 3.2 (a) or (b).

Sections (a) and (b) of Local Patent Rule 3.2 require that "the party claiming patent infringement shall produce to each opposing party or make available for inspection and copying" the following categories of documents:

    a. "<u>All documents</u> concerning any disclosure, sale or transfer, or offer to sell or transfer of the claimed invention prior to the bar date under 35 U.S.C. § 102(b) and/or the date of invention for the patent in suit;" and

    b. "<u>All documents</u> evidencing the conception and first reduction to practice of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to L. P. R. 3.1(f), whichever is earlier."

L. P. R. 3.2 (a) required Datatrak to produce all documents in its possession, custody or control relating to 35 U.S.C. §102(b) statutory bars to patentability.  These documents are important to Medidata's invalidity defenses because if Datatrak sold or publicly disclosed devices embodying the claims of the '087 Patent before the priority date of the patent, the '087 Patent may be found invalid under 35 U.S.C. § 102(b).   But Datatrak did not produce them on July 12, 2011 and still has not produced them.  By delaying production of these documents, Datatrak increases the chances that Medidata will not discover and prove a statutory bar to the validity of the '087 Patent.  Not only does this delay advantage Datatrak and disadvantage Medidata, but Datatrak's continuing failure to produce these documents also prejudices Medidata

2

because without them it cannot evaluate the strength of its §102(b) invalidity defenses, cannot plan for and pursue avenues of invalidity discovery that may be revealed by these documents, and cannot prepare to depose Datatrak's witnesses and third party witnesses on §102(b) invalidity issues.

L. P. R. 3.2 (b) required Datatrak to produce all documents relating to the conception and first reduction to practice of each claimed invention of the '087 Patent that were created on or before the date of application for the patent in suit or the priority date, whichever was earlier. But Datatrak did not produce these documents on July 12, 2011 and still has not produced them. By delaying production of these documents, Datatrak has prejudiced Medidata's defense of this action because these documents not only bear directly on the earliest date of invention that can be claimed for the '087 Patent, but importantly on what qualifies as prior art to the '087 Patent. Until Medidata receives these documents from Datatrak, Medidata cannot determine with any reasonable certainty the date of invention of the claims of the '087 Patent, cannot determine whether certain references qualify as prior art, and cannot conduct orderly discovery of its invalidity defenses.

The Case Management Order required Datatrak to make its L. P. R. 3.2 (a) and (b) production on July 12, 2011.  But July 12, 2011 came and went without Datatrak producing a single document responsive to L. P. R. 3.2 (a) or (b), let alone "all documents" as required by the language of the Local Rule.  To date, Datatrak has produced (i) a certified copy of the patent file wrapper history, (ii) a copy of the patent assignment, (iii) a copy of the provisional patent application, and (iv) a copy of the reexamination file wrapper history—all publicly available

3

documents that anyone could access from the USPTO website.[1]   These documents pertain only to L. P. R. 3.2 (c)-(d) and do not pertain to Datatrak's obligations under L. P. R. 3.2 (a) or (b).

In stark contrast, Medidata has complied fully with its production requirements under L. P. R. 3.4.  On August 12, 2011, Medidata produced 4,852 pages of relevant, responsive technical documents, such as "Medidata Rave®:  Technical Architecture," "Medidata Rave® Version 5.6.2: Release Planning Guide," and "Medidata Rave®: Version 5.6.4: Release Notes." Medidata has also continued to provide thousands of pages of responsive documents, in productions dated November 10, 2014, November 21, 2014, December 1, 2014, January 5, 2015 and January 29, 2015 totaling over 22,000 pages.  Medidata has also provided Datatrak with every major version of source code for the accused Rave® system since 2008.

### A.    Medidata's Diligent Efforts to Obtain L. P. R. 3.2 (a) and (b) Compliance

#### 1.    *Medidata's Efforts Prior to the Reexamination Stay*

On July 12, 2011 Datatrak failed to produce any L. P. R. 3.2 (a) or (b) documents.  On July 21, 2011 Medidata wrote to Datatrak informing it of this deficiency and requested that it (i) confirm that it had conducted a diligent search for these documents, (ii) identify all categories of documents that do not exist, and (iii) produce any responsive documents found by July 28, 2011. (Ex. 1, Jul. 21, 2011 Letter to M. Watson.)  On August 1, 2011, Datatrak responded, refusing to provide any of the requested confirmations, and stated only that it "reserves the right to amend and supplement the Contentions and Document Production, especially as discovery and document collection proceeds."  (Ex. 2, Aug. 1, 2011 Letter to A. Burgy.)

On August 5, 2011, Medidata wrote again regarding Datatrak's deficiencies in document production, and repeated its prior request, noting that Datatrak "cannot simply hold back

---

[1] Datatrak has also produced human resources-type job description documents and organizational charts—neither of which have any relevance to L. P. R. 3.2(a) or (b).

responsive documents until its final infringement contentions are due." (Ex. 3, Aug. 5, 2011 Letter to M. Watson).  On August 19, 2011, Datatrak responded by stating once again only that it "reserves the right to amend and supplement its Contentions and Document Production" and that "DATATRAK is moving expeditiously to identify and collect responsive documents. . . ." (Ex. 4, Aug. 19, 2011 Letter to A. Burgy.)

### 2. *Medidata's Efforts After the Reexamination Stay*

Soon after the stay lifted, on September 22, 2014, Medidata again wrote to Datatrak requesting Local Patent Rule compliance, including production of L. P. R. 3.2 (a) and (b) documents (Ex. 5, Sept. 22, 2014 Letter to G. Yanchar).  Medidata yet again repeated its request that Datatrak confirm that it conducted a diligent search for these documents, identify those categories it did not believe exists and produce any responsive documents found immediately. (*Id.* at 4.)  After three weeks of silence from Datatrak, on October 14, 2014 Medidata made a fourth request to Datatrak for compliance with L. P. R. 3.2 (a) and (b). (*See* Ex. 6, Oct. 14, 2014 Letter to G. Yanchar.)

Two weeks later, on October 28, 2014, Datatrak finally responded, cryptically stating, "[m]uch of the information and documents Medidata has requested resides in various paper and electronic forms, the majority of which has not been accessed in years and some of which may be in Germany." (Ex. 7, Oct. 28, 2014 Letter to M. Word.)  In that letter Datatrak promised to begin document production "within one month." (*Id.*)  But it never did.

On November 24, 2014, Medidata again wrote to request that Datatrak satisfy its document production obligations (including its L. P. R. 3.2 production obligations), and asked Datatrak to provide a date certain for its production.  (Ex. 8, Nov. 24, 2014 Letter to G. Yanchar.)  Not only did Datatrak fail to produce documents as promised, but it ***ignored this letter entirely***.

On December 5, 2014, Medidata wrote its ***sixth*** request to Datatrak.  (Ex. 9, Dec. 5, 2014 Letter to G. Yanchar.)  Datatrak responded on December 9, 2014, stating "[w]e are currently in the process of gathering documents for production" and attempted to justify its failure to produce documents based on continuing negotiations of ESI issues.  (Ex. 10, Dec. 9, 2014 Letter to M. Word.)  This is no excuse for failing to produce documents that should have been produced in compliance with the Court's Order and the Local Patent Rules in July, 2011.  On December 14, 2014, Medidata again repeated its request to Datatrak for Local Patent Rule compliance and requested a meet and confer to discuss the issue.  (Ex. 11, Dec. 14, 2014, Letter to G. Yanchar.)  After exchanging several more letters and e-mails on the issues, Datatrak finally agreed to a meet and confer. (*See* Exs. 12-18.) On December 23, 2014, Datatrak and Medidata met and conferred via telephone conference regarding several Local Patent Rule issues, including L. P. R. 3.2 (a) and (b). (Word Decl., ¶ 20.) During that telephone conference, Datatrak came up with yet another excuse for its failure to produce its L. P. R. 3.2 (a) and (b) documents, claiming it could not comply in the foreseeable future because of Datatrak's migration from paper to electronic files during the stay—notably long ***after*** these documents were due for production. (*Id*. at ¶ 21.) During the meet and confer, Datatrak confirmed that it was unwilling to provide a date certain when it would make its L. P. R. 3.2 (a) and (b) production, and further stated that it believed it was under no obligation to provide such a date.  (*Id*. at ¶ 22.)  When asked what Datatrak had done to identify any such documents, Datatrak refused to confirm a diligent search of its document repositories had been conducted and indicated that the case had only been "unstayed" for a few months. (*Id.* at ¶ 23.)  Datatrak would only state that it was working "earnestly" to identify these documents since the case has resumed.[2]  (*Id.*)

---

[2] Despite repeated requests from Medidata to make a record of the statements and representations

After bringing this case nearly four years ago, Datatrak still has not produced a single document under L. P. R. 3.2 (a) or (b).  Medidata respectfully requests this Court bring an end to Datatrak's endlessly evasive behavior and compel it to produce all documents in its possession, custody or control responsive to L. P. R. 3.2 (a) and (b).

## III.  ARGUMENT

### A.  Governing Law Requires Datatrak Produce L. P. R. 3.2 (a) and (b) Documents

As have a number of other federal district courts, the Northern District of Ohio has promulgated Local Patent Rules that "apply to all civil actions . . . which allege infringement of a patent ... or which seek a declaratory judgment that a patent is not infringed, is invalid, or is unenforceable." L. P. R 1.2. The "overriding principle of these [Local Patent Rules] is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *InterTrust Techs. Corp. v. Microsoft Corp.*, Case No. C 01-1640, 2003 WL 23120174, *2 (N.D. Cal. Dec. 1, 2003).[3]

In accord with this principle, L. P. R. 3.1 requires the party claiming patent infringement to serve detailed "Infringement Contentions" very shortly after the pleadings have closed, and L.

---

made during these negotiations, Datatrak continues to refuse to allow a Court Reporter on any calls or meet and confers.  (*See* Ex. 18, Dec. 23, 2014 E-mail to G. Yanchar.)

[3] Because there appears to be only one reported decision from the Northern District of Ohio discussing the Local Patent Rules, this brief cites case law from other federal district courts discussing analogous local patent rules, which is consistent with the practices of various district courts. *See, e.g.*, *McKesson Information Solutions v. Epic Systems Corp.*, 242 F.R.D. 689, 695 n.1 (N.D. Ga. 2007) ("The Court finds decisions of the U.S. District Court for the Northern District of California, on whose local patent rules this District's local patent rules are based, to be persuasive authority for issues, such as these, concerning those rules."); *Ameranth, Inc. v. Pizza Hut, Inc.*, Civil Action No. 11-cv-1810-JLS, 2013 WL 3894880, at *8-9 (S.D. Cal. July 26, 2013) (citing to interpretations of the local patent rules from courts of the Northern District of California as persuasive authority); and *Nike, Inc. v. Adidas Am., Inc.*, 479 F. Supp. 2d 664, 667 n.3 (E. D. Tex. 2007) (considering interpretations of the local patent rules by courts of the Northern District of California as persuasive authority).

P. R. 3.2 requires the same party to accompany its Contentions with various documents related to the patented invention.  These two Rules "take [ ] the place of 'a series of interrogatories [and requests for production] that defendants would likely have propounded had the patent local rules not provided for streamlined discovery.'" *A.R. Arena Prods., Inc. v. Grayling Indus., Inc.*, 2012 WL 2953214, at *1 (N. D. Ohio Apr. 30, 2012) (quoting *Network Caching Tech., LLC v. Novell, Inc.*, Case No. C-01-2079, 2002 WL 32126128 at *4 (N.D. Cal. Aug.13, 2002).

### B.     Datatrak Has No Legitimate Excuse for its Failure to Comply with Local Patent Rule 3.2 (a) and (b) and this Court's Case Management Order

Datatrak is the ***plaintiff*** in this case.  It could ***and should*** have collected the documents required for its L. P. R. 3.2 productions before it filed this action as part of its required pre-filing investigation.  Even if it didn't, at a minimum, it could and should have collected these documents before the L. P. R. 3.2 deadlines in the Case Management Order.  Datatrak has no legitimate excuse for its disregard of its obligations under the Local Patent Rule 3.2 (a) and (b) and this Court's Case Management Order.

Medidata has gone to great lengths to try to obtain Datatrak's compliance with Local Patent Rule 3.2 (a) and (b) without the Court's intervention.  Through this process Datatrak has made many excuses for its decision not to produce these documents.  None of them are legitimate.  ***First,*** Datatrak claims it had no obligation to produce documents under Local Patent Rule 3.2 (a) or (b) or the Case Management Order because L. P. R. 3.10 states "[t]he parties' disclosures and responses may be amended or supplemented without leave of court until the Final Contentions are due under L. P. R. 3.10(b)-(d)."  However, Datatrak is conflating the obligation to comply with the Local Patent Rules on the date set by the Case Management Order with the ability to supplement its production if additional responsive documents are later discovered.  Allowing parties like Datatrak to withhold these important documents until late in

8

the litigation so it is free to shift positions on key issues, known as the "shifting sands" approach to patent litigation, is exactly what the Local Patent Rules were specifically designed to eliminate. *See Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.*, No. C 05-860 JF, 2006 WL 2228940, at *3 (N.D. Cal. Aug. 3, 2006) ("The purpose of requiring parties to disclose their theories early in the litigation and adhere to those theories once they have been disclosed is to avoid the 'shifting sands' approach that sometimes was observed in patent litigation prior to adoption of the Patent Local Rules.")

*Second,* Datatrak claims that ongoing negotiation of electronically stored information ("ESI") terms has delayed its production of documents.  But this is no excuse for non-compliance with the Local Patent Rules or the Court's Case Management Order.  Just as Medidata has produced tens of thousands of pages of documents despite the lack of a finalized ESI agreement, so too can Datatrak produce these specific documents that Datatrak has had an obligation to search for and produce by July 12, 2011.  Moreover, apparently to justify its non-production, Datatrak has slowed the negotiation of ESI issues to a snails pace, going weeks in between responding to letters from Medidata regarding ESI issues.  (*Compare* Ex. 19, Oct. 9, 2014 Letter to J. Wick, *with* Ex. 20, Dec. 9, 2014 Letter to E. Evans; *see also* Ex. 21, Aug. 17, 2011 Letter to Wick at 2 ("DATATRAK's lack of progress on these most basic e-discovery matters is unacceptable given that Medidata's requests for documents have been outstanding since June 27[, 2011].  Moreover DATATRAK's delay is prejudicing Medidata's ability to prepare its defense and to comply with its obligations under the applicable rules.").

*Third,* Datatrak claims that due to a migration from paper files to electronic files that took place *during the stay*, it cannot produce documents in a timely manner.  This excuse is meritless because Datatrak had an obligation to search for and produce these documents long

before the stay was entered, Datatrak can surely search its electronic files to locate these documents, and Medidata should not be prejudiced by Datatrak's failure to comply with the Local Patent Rules and produce these documents before the stay was entered.

**C.      Datatrak's Violation of This Court's Local Patent Rules Has Severely Prejudiced Medidata and Warrants Sanctions**

By delaying production of Local Patent Rule 3.2 (a) and (b) documents, Datatrak has severely prejudiced Medidata because it has been (1) unable to evaluate the strength of its §102(b) invalidity defenses, (2) unable to pursue expected avenues of §102(b) invalidity discovery, (3) unable to prepare to depose Datatrak and third party witnesses on §102(b) invalidity issues; (4) unable to ascertain the earliest date of invention that can be claimed for the '087 Patent; (5) unable to determine whether certain references qualify as invalidating prior art to the '087 Patent; and (6) unable to conduct orderly invalidity discovery as contemplated by the Local Patent Rules.

Datatrak's non-compliance with L. P. R. 3.2 (a) and (b) and the Case Management Order has needlessly increased Medidata's litigation costs.  Accordingly, for the foregoing reasons, Medidata respectfully requests reimbursement under Federal Rules of Civil Procedure 16 (f)(1)(C) and (2), 37 (a), and 37 (b)(2)(A) and (C) of attorney fees and costs associated with its efforts to obtain compliance with L. P. R. 3.2 (a) and (b) and in connection with this motion.

Fed. R. Civ. Pro. 37(a), addresses "motion(s) for an order compelling disclosure or discovery."  It states that: "[i]f the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court *must,* after giving an opportunity to be heard, require the party . . .  whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).  The Rule goes on to list three caveats, however, stating a "court

must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *A.R. Arena*, 2012 WL 2953214 at *11.  None of those exceptions apply here.

In addition, Case Management Orders (such as those scheduling L. P. R. productions) "are not mere formalities that can be disregarded or treated cavalierly."  *United States v. Parker*, 165 F. Supp. 2d 431, 439 (W.D.N.Y. 2001).  As the Ninth Circuit has observed:

> A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." … The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of [a party's] case.  Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.  Rule 16 was drafted to prevent this situation…

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (internal citations omitted).

Fed. R. Civ. P. 16 explicitly empowers courts to enforce their scheduling orders: "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii-vii), if a party or its attorney … (C) fails to obey a scheduling or other pretrial order."  Rule 16(f)(2) states that, unless the non-compliance was substantially justified or other circumstances make an award of expenses unjust, ". . . the court *must* order the party, its attorney, or both to pay the reasonable expenses—including attorney fees—incurred because of any non-compliance with this rule." (emphasis added).

## IV.    CONCLUSION

Because Datatrak has not complied with L. P. R. 3.2 (a) and (b) and the Case Management Order, despite repeated requests by Medidata to do so, Medidata respectfully requests that the Court enter the attached order compelling Datatrak to comply fully with Local

11

Patent Rule 3.2 (a) and (b), and ordering Datatrak to reimburse Medidata for its reasonable costs and attorney fees incurred in bringing this motion.

Dated:  February 9, 2015

/s/ Duane-David Hough
Duane-David Hough
dhough@mayerbrown.com
B. Clayton McCraw
cmccraw@mayerbrown.com
MAYER BROWN LLP
1675 Broadway
New York, NY  10019
(212) 506-2500 | Tel
(212) 262-1910 | Fax

Michael J. Word
mword@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
(312) 782-0600 | Tel
(312) 701-7711 | Fax

*Attorneys for Defendant Medidata Solutions, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 9, 2015, the undersigned caused a true and correct copy of the foregoing to be served via electronic mail on all counsel of record listed below.

> Daniel J. McMullen
> Georgia Yanchar
> Mark A. Watson
> CALFEE, HALTER & GRISWOLD
> The Calfee Building
> 1405 East Sixth Street
> Cleveland, Ohio  44114
> (216) 622-8200 | Tel
> (216) 241-0816 | Fax
> dmcmullen@calfee.com
> gyanchar@calfee.com
> mwatson@calfee.com

*/s/ Duane-David Hough*
Duane-David Hough

13

714629414